# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| THANH LAI NGOC NGUYEN, | Case No. 1:26-cv-00350-JLT-EPG-HC |
|---|---|
| Petitioners, | FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS AND DIRECT RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER |
| v. | |
| WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, et al., | |
| Respondents. | |

Petitioner is a federal immigration detainee proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth herein, the undersigned recommends that the petition for writ of habeas corpus be granted on Ground Four and Respondents be directed to immediately release Petitioner.

## I.

## BACKGROUND

Petitioner is a citizen of Vietnam who was admitted to the United States as a lawful permanent resident on September 27, 1991. On or about May 9, 2001, the Immigration and Naturalization Service initiated removal proceedings under section 240 of the Immigration and Nationality Act ("INA") by the issuance of a Notice to Appear, charging Petitioner with removability under section 237(a)(2)(A)(iii) and section 237(a)(2)(C) of the INA. (ECF No. 10-1 at 2, 5–6. [1]) On or about July 6, 2001, an immigration judge ("IJ") ordered Petitioner removed

---

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

from the United States to Vietnam. Petitioner's appeal of the Order of Removal, dated July 6, 2001, was due by August 6, 2001. (ECF No. 10-1 at 2, 8.) Respondents assert that there is no indication that Petitioner has a pending appeal of the July 6, 2001 order of removal. On or about November 24, 2025, Petitioner was taken into U.S. Immigration and Customs Enforcement ("ICE") custody. (ECF No. 10-1 at 2.)

On January 16, 2026, Petitioner filed a petition for writ of habeas corpus, asserting: (1) his continued detention violates due process and Zadvydas because there is no significant likelihood that Petitioner will be removed in the reasonably foreseeable future; (2) Respondents' third country policy violates due process, the INA, the Convention Against Torture ("CAT"), and implementing regulations; (3) Respondents' third country policy violates the Fifth and Eighth Amendments; and (4) Petitioner's re-detention violates the Fifth Amendment, 8 C.F.R. § 241.13, and the Administrative Procedure Act ("APA"). (ECF No. 1 at 13–18.) On February 20, 2026, Respondents filed a response, and on March 2, 2026, Petitioner filed a reply. (ECF Nos. 10, 12.)

## II.

## DISCUSSION

### A. Zadvydas

Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Section 241(a) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1231(a), authorizes the detention of noncitizens who have been ordered removed from the United States." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). "In particular, § 1231(a)(6) provides that after a 90-day 'removal period,'[2] a noncitizen 'may be detained' or

---

[2] "The removal period begins on the latest of three dates: (1) the date the order of removal becomes 'administratively final,' (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the alien is released from non-immigration detention or confinement." Johnson v.

may be released under terms of supervision." Arteaga-Martinez, 596 U.S. at 575. "After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Id. at 578–79 (quoting 8 U.SC. § 1231(a)(6)).

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court "read an implicit limitation" into the statute "in light of the Constitution's demands," holding that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689.

> After [a presumptively reasonable] 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Zadvydas, 533 U.S. at 701.

Here, Respondents contend that "the petitioner is lawfully detained under 8 U.S.C. § 1231(a)(6)" and because Petitioner "was taken into ICE custody on November 24, 2025," and

---

Guzman Chavez, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(1)(B)). "During the removal period, detention is mandatory." Guzman Chavez, 594 U.S. at 528 (citing 8 U.S.C. § 1231(a)(2)).

3

"[d]etention under 8 U.S.C. § 1231(a)(6) is presumptively reasonable up to six months," "the petitioner has failed to show that either the basis for detention or the length of detention are unlawful. Therefore, the Court should deny the petition." (ECF No. 10 at 2.)

"However, the burden-shifting framework from *Zadvydas* does not apply" to Ground Four, which concerns Respondents' failure to comply with 8 C.F.R. § 241.13(i) and "ICE's authority to *re-detain* [petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision]." Yan-Ling X. v. Lyons, No. 1:25-cv-01412-KES-CDB (HC), 2025 WL 3123793, at *3 (E.D. Cal. Nov. 7, 2025) (alterations in original) (quoting Nguyen v. Hyde, 788 F. Supp. 3d 144, 149 (D. Mass. 2025)). "[T]his is not your typical first round detainment of an alien awaiting removal. . . . *Zadvydas*, relied upon by Respondents, dealt with the initial detainment of an alien awaiting removal." Escalante v. Noem, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025).

**B. Revocation of Order of Supervision**

In Ground Four of the petition, Petitioner asserts that Respondents failed to comply with 8 C.F.R. § 241.13(i) in re-detaining him. (ECF No. 1 at 17–18.) "Specific regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed." Yan-Ling X., 2025 WL 3123793, at *3. 8 C.F.R. § 241.13(i) provides in pertinent part:

> (1) Violation of conditions of release. Any alien who has been released under an order of supervision under this section who violates any of the conditions of release may be returned to custody and is subject to the penalties described in section 243(b) of the Act. In suitable cases, the HQPDU shall refer the case to the appropriate U.S. Attorney for criminal prosecution. The alien may be continued in detention for an additional six months in order to effect the alien's removal, if possible, and to effect the conditions under which the alien had been released.

> (2) Revocation for removal. The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. Thereafter, if the alien is not released from custody following the informal interview provided for in paragraph (h)(3) of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal.

4

(3) Revocation procedures. Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(1)–(3).

8 C.F.R. § 241.4(b)(4) provides:

Service determination under 8 CFR 241.13. The custody review procedures in this section do not apply after the Service has made a determination, pursuant to the procedures provided in 8 CFR 241.13, that there is no significant likelihood that an alien under a final order of removal can be removed in the reasonably foreseeable future. However, if the Service subsequently determines, because of a change of circumstances, that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future to the country to which the alien was ordered removed or to a third country, the alien shall again be subject to the custody review procedures under this section.

8 C.F.R. § 241.4(b)(4). With regard to revocation, 8 C.F.R. § 241.4(*l*) provides in pertinent part:

(1) Violation of conditions of release. Any alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody. Any such alien who violates the conditions of an order of supervision is subject to the penalties described in section 243(b) of the Act. Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.

(2) Determination by the Service. The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:

5

> (i) The purposes of release have been served;
> (ii) The alien violates any condition of release;
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4(*l*)(1)–(2).

    1.   Change of Circumstances

The "regulations at 8 C.F.R. §§ 241.13(i) and 241.4(l) apply to non-citizens in petitioner's situation and outline the process to be followed," including that "when ICE revokes release to effectuate removal, 'it is [ICE's] burden to show a significant likelihood that the alien may be removed.'" Yan-Ling X., 2025 WL 3123793, at *3, 4 (alteration in original) (quoting Escalante, 2025 WL 2206113, at *3) (citing Roble v. Bondi, No. 25-CV-3196 (LMP/LIB), 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future."); Abuelhawa v. Noem, No. 4:25-CV-04128, 2025 WL 2937692, at *8 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the alien may be removed in the reasonably foreseeable future."); Nguyen, 788 F. Supp. 3d at 150).

The only evidence provided by Respondents that touches upon this issue is a declaration of a deportation officer, which states: "ICE is in the process of removing Petitioner to Vietnam. For this purpose, I have requested travel documents." (ECF No. 10-1 at 2.) Respondents do not provide any further details regarding ICE's efforts. "Respondents' intent to eventually complete a travel document request for Petitioner does not constitute a changed circumstance" that makes removal significantly likely in the reasonably foreseeable future. Hoac v. Becerra, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (alterations added) (citing Liu v. Carter, No. 25-cv-03036-JWL, 2025 WL 1696526, at *2 (D. Kan. Jun. 17, 2025)). See Vu v. Noem, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *6 (E.D. Cal. Nov. 6, 2025) (finding "general assertion that ICE is 'mak[ing] efforts' to obtain travel documents for petitioner . . . not compelling" because "Respondents do not identify any specific efforts they

have made to obtain a travel document from Vietnam for petitioner, much less whether they have any indication from Vietnam that it is likely to issue such a travel document").

Accordingly, Respondents have failed to satisfy their burden that changed circumstances have made Petitioner's removal significantly likely in the reasonably foreseeable future as required by 8 C.F.R. § 241.13(i). "[W]here an immigration regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute and ICE fails to adhere to it, the challenged action is invalid." Huang v. Albarran, No. 1:25-CV-01308 JLT EPG, 2026 WL 145631, at *7 (E.D. Cal. Jan. 20, 2026) (quoting Yan-Ling X., 2025 WL 3123793, at *6). "Here, DHS's failure to follow its own procedural regulations constitutes a due process violation" because "ICE re-detained Petitioner without complying with 8 C.F.R. § 241.13(i)(2)[.]" Huang, 2026 WL 145631, at *7.

Accordingly, the undersigned recommends finding that Petitioner's re-detention was unlawful and his immediate release from custody is warranted.[3] See Nguyen, 788 F. Supp. at 152–53 ("ICE's individualized determination to re-detain Mr. Nguyen is not in compliance with 8 C.F.R. § 241.13(f), (i)(2)" and "[b]ased on ICE's violations of its own regulations, I conclude that Mr. Nguyen's detention is unlawful and that his release is appropriate."); Liu, 2025 WL 1696526, at *3 ("Accordingly, the Court concludes that because officials did not properly revoke petitioner's release pursuant to the applicable regulations, that revocation has no effect, and petitioner is entitled to his release (subject to the same Order of Supervision that governed his most recent release)."); Yan-Ling X., 2025 WL 3123793, at *7 ("Petitioner has shown that she is likely to succeed on her claim that ICE did not have sufficient grounds to re-detain her under the regulations, and that her re-detention was therefore unlawful. Her immediate release is required to return her to the status quo ante.").

2. Pre-Deprivation Hearing

"[M]any courts in this district have found that when a non-citizen subject to a final order of removal is released on OSUP and is re-detained years later, the non-citizen is entitled to a pre-

---

[3] In light of this conclusion, the Court declines to address Petitioner's Zadvydas claim.

deprivation hearing prior to detention due to an accrued liberty interest." Huang, 2026 WL 145631, at *8 (citing J.L.R.P. v. Wofford, No. 1:25-cv-01464-KES-SKO (HC), 2025 WL 3190589, at *8–10 (E.D. Cal. Nov. 14, 2025); Alva v. Kaiser, No. 25-cv-06676-RFL, 2025 WL 2419262, at *3–5 (N.D. Cal. Aug. 21, 2025)). Applying the Mathews v. Eldridge, 424 U.S. 319 (1976), factors, the J.L.R.P. court "found that the petitioner was entitled to a bond hearing prior to re-detention because":

> (1) petitioner had a significant private interest in remaining free from detention after being out of custody for nearly four years and built normal attachments to life (2) the risk of erroneous deprivation is high because 8 C.F.R. §§ 241.13 and 241.4 do not provide for review of ICE's reasons for revocation by a neutral arbitrator and (3) the government's interest in detaining petitioner without a hearing is low because in immigration court, custody hearings are routine with minimal costs.

Huang, 2026 WL 145631, at *8 (citing J.L.R.P., 2025 WL 3190589, at *9–10). "Similarly, in *Alva*, the court found a due process violation where the government detained a non-citizen with a final order of removal, released on OSUP for over six years, without a pre-deprivation hearing." Huang, 2026 WL 145631, at *8 (citing Alva, 2025 WL 2419262, at *3–5). Likewise, in Huang, the court found a due process violation where the government detained the petitioner with a final order of removal, released on OSUP for nearly seven and a half years, without a pre-deprivation hearing. Huang, 2026 WL 145631, at *9.

Based on the foregoing, the undersigned recommends finding that "in the event of his re-detention, Petitioner has a right to a pre-deprivation hearing where the government bears the burden of showing that Petitioner's release poses a flight risk or danger to the community." Huang, 2026 WL 145631, at *9 (citing J.L.R.P., 2025 WL 3190589, at *9–10; Alva, 2025 WL 2419262, at *3–5).

### C. Third Country Removal

In Grounds Two and Three, Petitioner challenges Respondents' third country removal policy as unlawful and in violation of due process. Respondents do not engage with Petitioner's claims regarding third country removal. (ECF No. 10.) The record before this Court at this time indicates that Respondents intend to remove Petitioner to Vietnam, not a third country, consistent

with the final order of removal. Accordingly, the undersigned recommends finding that habeas relief is not warranted on these grounds. See Gevorgyan v. Noem, No. 5:25-CV-03408-SRM-ADS, 2026 WL 20902, at *5 (C.D. Cal. 2026) (finding "Petitioner's third-country removal claim is not constitutionally ripe" because officer "attests that ICE intends to remove him to Armenia and that no request for removal to a third country has been made," and "there is no evidence . . . that suggests ICE intends to remove him to a country other than Armenia"); Uzzhina v. Chestnut, No. 1:25-CV-01594-DAD-SCR, 2025 WL 3458787, at *2 (E.D. Cal. Dec. 2, 2025) ("The court will deny without prejudice this request for temporary injunctive relief because the evidence before the court at this time is that respondents intend to remove petitioner to either Russia or Kazakhstan, not a third country.").

## III.

## RECOMMENDATION

Accordingly, the undersigned HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED on Ground Four.

2. Respondents be directed to immediately release Petitioner from custody under the conditions of his most recent order of supervision.

3. Respondents be enjoined and restrained from re-detaining Petitioner unless there are material changed circumstances and a neutral decisionmaker determines that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or Respondents demonstrate by clear and convincing at a pre-deprivation bond hearing before a neutral decisionmaker that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate

9

Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 6, 2026**                    /s/ _Erica P. Grosjean_
                              UNITED STATES MAGISTRATE JUDGE